Filed 6/26/15  P. v. Perez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049443 |
| v. | (Super. Ct. No. 11CF1208) |
| ILDEFONSO PEREZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Reversed with directions.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Ildefonso Perez of first degree murder (Pen. Code, § 187, subd. (a), count 1; all further statutory references are to this code), attempted murder (§ 664/187, subd. (a), count 2), and street terrorism (§ 186.22, subd. (a), count 3). With regard to the murder and attempted murder counts, the jury found defendant committed the crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). With regard to the attempted murder count, the jury also found he personally used a deadly weapon (§ 12022, subd. (b)(1)).

The court sentenced defendant to a total term of 35 years to life.

Defendant asserts three grounds for his appeal: (1) the recent Supreme Court decision in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*) requires reversal because the jury was improperly instructed as to the natural and probable consequences theory of aider and abettor liability; (2) the court improperly instructed the jury on mutual combat; and (3) his sentence violates the constitutional prohibition on cruel and unusual punishment. The Attorney General concurs on the first ground and we agree the argument is well taken; we therefore reverse the judgment and remand the case for defendant to either be resentenced for second degree murder or be granted a new trial. We disagree with defendant's second contention. But because defendant was a minor at the time the crimes were committed, the court must consider this fact if defendant is resentenced; his youth requires his sentence to include a possibility for release on parole while he is still young enough to present him with an opportunity to demonstrate rehabilitation.

FACTS

Abin Delgado, a member of a criminal street gang called KD, was killed in a fight involving members of his gang against members of its enemy, a criminal street gang called OCK. Defendant, who was 17 years old at the time, was a member of OCK. The fight may have involved as many as 40 men and the exact sequence of events is

2

confusing. As interpreted by appellant, "Delgado started a fight with [Fernando] Solorzano from OCK who was walking with some women. The fight concluded. Delgado sought out his fellow KD members and re-approached Solorzano and the women. One of the women called out to Bryan Lopez who was 'partying' with his OCK friends. The OCK group and the KD group started fighting." Defendant was one of the participating OCK members.

Delgado suffered a number of injuries, including blunt force trauma to his shoulders and head. The trauma to his head included severe brain injury, a skull fracture, and subarachnoid hemorrhage. He died shortly after having been transported to the hospital.

John Varona, another KD member, also suffered serious injuries. He received a laceration to his head, abrasions to his face, several stab wounds to his back, a puncture wound to his hand, an abrasion to his leg and a stab wound that punctured his lung.

Various weapons were found at or near the scene of the fight, including a three-foot metal pipe, a scooter, and a knife. There were blood stains on the pipe and human hair on the handle bar of the scooter. Blood was found on the driver's side of a truck, on the street pavement, and on the sidewalk.

Several witnesses identified defendant as an active participant in the fight. Defendant's former girlfriend, Joanne Barrientos, saw defendant holding a pipe. She did not see defendant hit anyone with the pipe but testified he was fighting with his hands and feet. Barrientos' sister, Maria, testified she saw defendant swinging the pipe at a person on the ground. Robert DeLeon told officers defendant was standing there during the melee but did not hit the victim. Defendant had a scooter or a three feet long pipe. DeLeon stated to the police defendant had later said, "'I cracked that fool.'" And that he had said he cracked "the shit out of him."

3

DISCUSSION

*1. The "Natural and Probable Consequences" Instruction*

The prosecutor's theory was that defendant was the killer and used a pipe in beating Delgado. The prosecutor argued defendant committed "[f]irst degree premeditated malice murder." Although the jury convicted defendant of first degree murder, it is doubtful the jury accepted this theory because, among other things, they found defendant did not use a deadly weapon during the commission of the crime. It is more probable the jury based its guilty verdict on the doctrine of aiding and abetting.

The court instructed the jury on two aiding and abetting principles, including CALCRIM No. 403. This instruction tells the jury they may find defendant guilty of murder if, the People prove that another participant in a fight committed the crime of first degree premeditated murder, and "[u]nder all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the First Degree Premeditated Murder . . . was a natural and probable consequence of the commission of the [fight] . . . ." The instruction then defines "natural and probable consequence" and concludes "[i]f you decide the defendant aided and abetted the crime of Fighting . . ., and that First Degree Premeditated Murder . . . was a natural and probable consequence of that crime, the defendant is guilty of First Degree Premeditated Murder."

In *Chiu*, our Supreme Court held "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles." (*Chiu, supra,* 59 Cal.4th at pp. 158-159.) The court concluded "punishment for second degree murder is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and

4

foreseeably result in a murder under the natural and probable consequences doctrine." (*Id.* at p. 166.)

Because of the decision in *Chiu*, which was filed after defendant's trial, CALCRIM No. 403 inappropriately permitted the jury to find defendant guilty of first degree murder under the natural and probable consequence doctrine. The Attorney General agrees the conviction should be reversed. In *Chiu*, the court allowed the prosecution "to accept a reduction of the conviction to second degree murder or to retry the greater offense." (*Id*. at p. 168.) We will give the prosecution the same choice here.

*2. The "Mutual Combat" Instruction*

The court instructed the jury with CALCRIM Nos. 3471 and 3472, which advised the jury of the limitations on the defense of self-defense or defense of others where parties engage in mutual combat. Defendant contends this created prejudicial error because there was insufficient evidence the two criminal street gangs engaged in mutual combat. We disagree.

CALCRIM No. 3471, as given, stated in part "A person who engages in mutual combat or who starts a fight has a right to self-defense only if: [¶] One, he actually and in good faith tried to stop fighting; [¶] and two, he indicated by word or by conduct, to his opponent in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting; [¶] and three, he gave his opponent a chance to stop fighting. [¶] If the defendant meets these requirements, then he had a right to self-defense if the opponent continued to fight. [¶] . . . [¶] A fight is mutual combat when it began or continued by mutual consent or agreement. [¶] That agreement may be expressly stated or implied and must occur before the claim to self-defense arose." CALCRIM No. 3472, as given, provided: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

5

Substantial evidence supported the giving of these instructions. DeLeon testified defendant was "hanging out" with him and at least 10 other OCK members in an apartment. They received a call that one of their members "is getting chased by the guys from KD." The men ran out to confront the KD members who had been chasing an OCK member. These facts alone permitted the jury to conclude mutual combat was contemplated by defendant and his cohorts.

In addition, even if there were an absence of evidence of mutual combat, the instruction would only have been relevant if there had been sufficient evidence permitting the jury to conclude defendant was entitled to the defense of self-defense. The record fails to show any such evidence. When confronted by the OCK group, the KD members attempted to run away and the OCK gang chased them, carrying their weapons. The OCK members were the aggressors.

*3. Cruel and Unusual Punishment*

Our opinion calls either for defendant to be retried or to be resentenced. Therefore, we agree with the Attorney General that the contention defendant's sentence is unconstitutional because it fails to consider his youth and is not ripe for adjudication at this time. Should defendant either be resentenced for second degree murder in accordance with this opinion, or if he is to be resentenced following a retrial where he might be found guilty of first degree murder, the court should consider the fact defendant was a minor at the time the crimes were committed. (*Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455, 183 L.Ed.2d 407]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1360-1361.)

DISPOSITION

Appellants' conviction on count 1 is reversed. The case is remanded to the trial court with directions to allow the prosecutor to either accept a reduction of the

conviction on this count to second degree murder or to retry defendant for first degree murder. The conviction on the remaining counts and the remaining enhancements are affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.